IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Bushra Ibrahim, | No. CV-23-2059-PHX-DLR (MTM) |
| Plaintiff, | **REPORT AND RECOMMENDATION** |
| v. | |
| Commissioner of the Social Security Administration, | |
| Defendant. | |

TO THE HONORABLE DOUGLAS L. RAYES, SENIOR UNITED STATES DISTRICT JUDGE:

Plaintiff Bushra Ibrahim ("Plaintiff") seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security ("the Commissioner" or "Defendant"), denying her claim for Supplemental Security Income under section 1614(a)(3)(A) of the Social Security Act. Because the decision of the Administrative Law Judge ("ALJ") is not supported by substantial evidence and contains legal error, the Court will recommend that Defendant's Motion for Remand be granted, the Commissioner's decision be reversed, and this case be remanded for further administrative proceedings.

**BACKGROUND**

Plaintiff was born on February 20, 1985. She has a high school education, and she does not have past relevant work experience. (Administrative Record ("AR") at 23.)

\\\

Plaintiff filed an application for Supplemental Security Income under Title XVI of the Social Security Act on April 5, 2019, alleging disability beginning on December 1, 2016.[1] (AR at 16.) The Commissioner denied Plaintiff's claims at the initial and reconsideration phases of administrative review. (AR at 98-101, 105-113.) Plaintiff sought further review by an ALJ, who conducted a hearing on July 19, 2022. (AR at 35-75.) In an August 19, 2022, decision, the ALJ found Plaintiff not disabled within the meaning of the Social Security Act. (AR at 13-30.) The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (AR at 1-7.) Plaintiff then filed this action pursuant to 42 U.S.C. § 405(g).

**DISCUSSION**

## I.      Legal Standard

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). Only issues that are argued specifically and distinctly in a party's opening brief are reviewed. *Indep. Towers of Washington v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003). Moreover, "when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal." *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999). Failure to do so will only be excused when necessary to avoid a manifest injustice. *Id.*

A court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance. *Id.* In determining whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* Generally, when the evidence is susceptible to more than one rational interpretation, courts must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th

[1] Plaintiff later amended the alleged onset date to April 5, 2019, to correspond with the Title XVI application date. (AR at 16.)

- 2 -

Cir. 2012). "Overall, the standard of review is 'highly deferential.'" *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1002 (9th Cir. 2015).

Harmless error principles apply in the Social Security Act context. *Molina*, 674 F.3d at 1115. An error is harmless if there remains substantial evidence supporting the ALJ's decision, and the error does not affect the ultimate determination. *Id.* The claimant usually bears the burden of showing that an error is harmful. *Id.* at 1111.

**II.    Five-Step Sequential Evaluation**

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled, and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a severe medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). If not, the claimant is not disabled, and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity and determines whether the claimant is still capable of performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not disabled, and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work based on the claimant's residual functional capacity, age, education, and work experience. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

At step one, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since April 5, 2019—the amended alleged onset date. (AR at 18.) At step two, the ALJ found that Plaintiff had the following severe impairments: lumbar spondylosis,

migraine headaches, diabetes mellitus with peripheral neuropathy of the bilateral lower extremities, bilateral hammer toe, plantar fasciitis, and obesity. (AR at 18-19.) At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR at 19.)

At step four, the ALJ found that Plaintiff retained the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). The ALJ found that Plaintiff is limited to occasional climbing of ramps and stairs but never ladders, ropes or scaffolds, and occasional stooping, kneeling, crouching, and crawling. (AR at 20-22.) Additionally, Plaintiff can never work at unprotected heights or around moving mechanical parts, and she is limited to occasional vibration and moderate noise. *Id.* The ALJ further found that Plaintiff has no past relevant work. (AR at 23.)

At step five, however, the ALJ found that considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform. Specifically, with these limitations, the ALJ found Plaintiff could perform the jobs of parking-lot attendant (DOT 915.473-010, light exertion and unskilled, SVP 2), assembler, small parts (DOT 706.684-022, light exertion and unskilled, SVP 2), and cleaner, housekeeping (DOT 323.687-014, light exertion and unskilled, SVP 4). (AR at 23-24.)

Accordingly, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from April 5, 2019, through the date of his decision. (AR at 24.)

**III.    Analysis**

Plaintiff presents two issues for the Court's consideration. First, Plaintiff contends the ALJ erred in rejecting the opinion of her treating physician, Steven Sayegh, M.D. Second, Plaintiff argues that the ALJ erred in rejecting her symptom testimony in the absence of clear and convincing reasons supported by substantial evidence in the record. In his Answering Brief and Motion for Remand, Defendant concedes the first issue. The

Court finds that granting Defendant's Motion for Remand is necessary to further consider Dr. Sayegh's opinion.

### A.    Medical Opinion Evidence

Plaintiff first argues that the ALJ erred by rejecting the assessment from Dr. Sayegh without providing sufficient explanation supported by substantial evidence, including failing to explain his consideration of the supportability and consistency factors. Plaintiff contends that this error was not harmless as the vocational expert concluded that the assessed limitations from Dr. Sayegh would preclude all work.

In 2017, the Commissioner revised the regulations for evaluating medical evidence for all claims filed on or after March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844 (Jan. 18, 2017). Here, Plaintiff's claim was filed after the effective date; therefore, the revised rules apply. Unlike the old regulations, the revised rules do not require an ALJ to defer to the opinions of a treating physician nor assign every medical opinion a specific evidentiary weight. 20 C.F.R. §§ 404.1520c(a), 416.920c(a); *see also Lester v. Charter*, 81 F.3d 821, 830-31 (9th Cir. 1995) (requiring an ALJ provide "specific and legitimate reasons that are supported by substantial evidence in the record" when rejecting a treating physician's opinion).

The revised rules instead require the ALJ to consider all opinion evidence and determine the persuasiveness of each medical opinion's findings based on factors outlined in the regulations. 20 C.F.R. §§ 404.1520c(a)–(b), 416.920c(a)–(b). The most important factors considered by an ALJ are "consistency" and "supportability." 20 C.F.R. § 404.1520c(b)(2). Supportability is defined as how "relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical findings." 20 C.F.R. § 404.1520c(c)(1). Consistency means "the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) (citing 20 C.F.R. § 404.1520c(c)(2)). The ALJ should also treat opinions as more persuasive if they are more consistent with "other medical sources and nonmedical sources in the claim." 20 C.F.R. § 404.1520c(c)(2).

Lastly, the ALJ can also consider, to a lesser degree, other factors, such as the length and purpose of the treatment relationship, the kinds of examinations performed, and whether the medical source actually examined the claimant. *Woods*, 32 F.4th at 792.

Recently, the Ninth Circuit held that the revised rules clearly intended to abrogate its precedent requiring ALJs to provide "specific and legitimate reasons" for rejecting a treating physician's opinion. *Id.* Nevertheless, "[e]ven under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Id.* Therefore, an ALJ, "must 'articulate . . . how persuasive' it finds 'all of the medical opinions' from each doctor or other source, and 'explain how it considered the supportability and consistency factors' in reaching these findings." *Id.* (citing 20 C.F.R. § 404.1520c(b), (b)(2)) (internal citation omitted).

Plaintiff began treatment for hypertension, fatigue, and headaches with Dr. Sayegh in April 2018. (AR at 427-430.) In July 2018, Plaintiff told Dr. Sayegh she was experiencing lower back pain and chronic headaches, and he referred her to pain management. (AR at 425-426.)

In July 2019, Dr. Sayegh completed a "Medical Assessment of Ability to do Work Related Physical Activities," as a result of Plaintiff's pain caused by her conditions.[2] (AR at 513-515.) Dr. Sayegh assessed that Plaintiff could stand and/or walk for a total of less than three hours in an eight-hour workday, and she could sit for a total of three hours in an eight-hour workday. (AR at 513.) Dr. Sayegh assessed that Plaintiff had suffered from pain and fatigue to a "severe" degree, defined as "Extreme impairment of ability to function (greater than 15% off task)." (AR at 515.) Through this assessment, Dr. Sayegh limited Plaintiff to markedly less than the full range of sedentary work. (AR at 21, 513-515.)

Having considered these assessments, the ALJ found Dr. Sayegh's opinion not persuasive and "overly restrictive," stating that "[t]he objective medical evidence … simply does not support Dr. Sayegh's limitations." (AR at 23.) The ALJ stated that he

---

[2] Dr. Sayegh also completed a Headache Questionnaire, but Plaintiff does not rely on this portion of Dr. Sayegh's assessment for the purpose of this appeal. (AR at 516.)

relied mostly on the assessments of State agency medical consultants, "both of whom limited the claimant to light work with occasional climbing and postural changes." (AR at 22, 76-85, 88-97.)

The Court finds that the ALJ failed to adhere to the requirements for evaluating medical opinions. Although it may have been the ALJ's intent to refute Dr. Sayegh's assessment based on inconsistencies between the assessment, Dr. Sayegh's own treating notes, and the larger evidentiary record, the ALJ failed to satisfy the regulation's requirement that the ALJ "explain how we considered the supportability and consistency factors for a medical source's medical opinions ... in your determination or decision." 20 C.F.R. § 404.1520c(b)(2). The ALJ makes a conclusory reference that the State agency medical doctors' reports are more "persuasive because they are generally consistent with the preponderance of the longitudinal medical evidence of record as a whole" but leaves the Court to sift through numerous examination findings—"[t]he objective medical evidence, as detailed above…"—to assess which evidence specifically relates to the supportability and consistency factors as set forth in the Commissioner's regulations. (AR at 23.)

While the Ninth Circuit held that "an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence[,]" *Woods*, 32 F.4th at 787, the court clarified that "[t]he agency must articulate how persuasive it finds all of the medical opinions from each doctor or other source, and explain how it considered the supportability and consistency factors in reaching these findings[,]" *id.* at 792 (cleaned up). *See Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) ("[T]he ALJ must provide sufficient reasoning that allows us to perform our own review, because the grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.") (internal citations and quotation marks omitted); *see also Carrie D. v. Kijakazi*, 2022 WL 2901010, at *6 (E.D. Wash. June 6, 2022) (holding the ALJ's general reference to normal clinical findings and the lack of support from the doctor's treatment notes is "an insufficient explanation under *Woods*"); *Bogner v. Comm'r of Soc. Sec. Admin.*, 2023 WL 4734120, at *4 (D. Ariz. July 25, 2023)

(finding the ALJ did not provide substantial evidence to reject medical opinions when the ALJ failed to discuss how the underlying treatment notes supported or did not support the providers' opinions); *Fairbank v. Comm'r of Soc. Sec. Admin.*, 2023 WL 3534660, at *4 (D. Ariz. May 18, 2023) (finding the ALJ's notations failed to support discrediting a medical opinion when the ALJ failed to explain how they were inconsistent with specific assessed limitations from the medical opinion).

Accordingly, the Court finds that the ALJ erred in disregarding Dr. Sayegh's opinion. The ALJ's decision to reject Dr. Sayegh's opinion is not supported by substantial evidence.

### B. Plaintiff's Symptom Testimony

Plaintiff argues that the ALJ committed materially harmful error by rejecting Plaintiff's symptom testimony without "specific, clear and convincing reasons supported by substantial evidence" in the record. Plaintiff contends that this error was not harmless as the vocational expert testified that limitations consistent with Plaintiff's reported symptoms would interfere with the ability to perform any sustained work.

In evaluating a claimant's symptom testimony, the ALJ employs a two-step process. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, the ALJ considers whether the claimant has presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc) (internal quotation marks omitted)). Second, if the claimant presents such evidence, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014-15 (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). The Ninth Circuit has expressly held that a claimant "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen*, 80 F.3d at 1282 (internal citation omitted).

The clear and convincing standard is the most demanding in Social Security cases. *Garrison*, 759 F.3d at 1015. An ALJ's "vague allegation" that a claimant's symptom testimony is inconsistent with the medical record does not meet the clear and convincing standard. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102-03 (9th Cir. 2014). Similarly, an ALJ cannot satisfy the clear and convincing standard based solely upon "a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). Rather, in making credibility determinations, an ALJ may consider a variety of factors in evaluating symptom testimony including, "[the claimant's] reputation for truthfulness, inconsistencies either in [her] testimony or between [her] testimony and [her] conduct, [her] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [she] complains." *Light v. Soc. Sec. Admin., Comm'r*, 119 F.3d 789, 792 (9th Cir. 1997).

Plaintiff testified that she could not work because of her severe migraines that stopped her from doing anything. (AR at 46.) When she gets a migraine, Plaintiff testified that she takes medicine, sleeps for four to five hours, then feels dizzy when she awakes. (AR at 46.) Plaintiff also testified that because of pain in her back, shoulders, neck, hands, feet, and knees, she can only walk for 10 minutes at a time and sit for 15 minutes at a time. (AR at 49-50.) Plaintiff further testifies that due to her neuropathy, she can at most lift a gallon of milk. (AR at 51.) Due to her combination of impairments, Plaintiff testified that she experiences an average daily pain level of an eight out of ten. (AR at 47.)

In evaluating her testimony, the ALJ determined that step one was satisfied as "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms." (AR at 20.) However, the ALJ rejected Plaintiff's symptom testimony, offering two reasons. First, the ALJ discounted Plaintiff's testimony because the "overwhelming results of the claimant's physical examinations were normal" and that State agency medical consultants' examinations confirmed these generally benign results. (AR at 21-22.) Second, the ALJ discounted Plaintiff's testimony because Plaintiff's daily activities were inconsistent with her symptom testimony. (AR at 20.)

As to the inconsistencies between Plaintiff's symptom testimony and the objective medical evidence, these inconsistencies are a relevant factor the ALJ must consider in the evaluation of symptom testimony. *See* Social Security Ruling (SSR) 16-3p, 2017 WL 5180304 at *6 ("We will consider an individual's statements about the intensity, persistence, and limiting effects of symptoms, and we will evaluate whether the statements are consistent with objective medical evidence and the other evidence."). Additionally, the findings of State agency medical consultants are to be considered by the ALJ in the evaluation of symptom testimony. *Id.* at *7 ("State agency medical and psychological consultants and other program physicians and psychologists may offer findings about the existence and severity of an individual's symptoms. We will consider these findings in evaluating the intensity, persistence, and limiting effects of the individual's symptoms.").

Here, the ALJ found that while Plaintiff describes she experiences on average 8 out of 10 pain throughout her body, the objective evidence does not support these allegations. The ALJ specifically found the following in reaching his conclusion. Plaintiff's alleged neck impairment is refuted by X-rays showing only minimal cervical degeneration. (AR 19, 491, 528-529, 560, 562-567, 571, 575, 578, 801-806.) Plaintiff's alleged shoulder impairment is refuted by MRIs showing only mild to moderate tendinosis without any muscular tear. (AR 20, 806-808, 1053.) Plaintiff's alleged back impairment is refuted by physical examinations of her spine where the spine was concluded to be "normal." (AR 21, 560, 562-567, 571, 575, 578.) Plaintiff's alleged hand impairment is refuted by an EMG/NCV showing only mild right carpal tunnel. (AR 20, 801-805.)

Despite Plaintiff's contention that the ALJ "failed to connect anything in the medical evidence with anything inconsistent within Ibrahim's symptom testimony," the ALJ specifically referred to the tests above to illustrate the main inconsistency from the testimony: Plaintiff's high pain rating was not consistent with the objective medical tests. (AR at 47.) Plaintiff testified that on average, she was an experiencing an 8 out of 10 on the pain scale. (AR at 47.) The aforementioned objective medical tests resulted in diagnoses of "mild", "minimal", and "moderate" conditions. (AR 19-22.) The ALJ relied on the State agency medical consultants' assessments that "[t]he severity of [client's] alleged physical

- 10 -

impairments are not consistent [with] listing level severity." (AR at 81, 93.) The ALJ specifically, and clearly, referred to all these diagnoses and assessments in his evaluation of the inconsistency between Plaintiff's symptom evidence and the objective medical tests. (AR 19-22.)

The Court, therefore, finds the ALJ identified a specific, clear and convincing reason for discounting Plaintiff's symptom testimony and that reason is supported by substantial evidence.

As to the ALJ's finding that Plaintiff's activities of daily living are not consistent with the severity of her allegations, where the "record reflects that the claimant has normal activities of daily living including cooking [and] house cleaning . . . [this] suggest[s] that the claimant may still be capable of performing the basic demands of competitive, remunerative, unskilled work on a sustained basis." *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008). While a claimant is not required to be completely incapacitated to be found disabled, an ALJ may consider the Plaintiff's daily activities to determine whether they are inconsistent with the alleged symptoms. S*ee* 20 C.F.R. § 404.1529(c)(3)(i) (permitting consideration of a claimant's daily activities when weighing symptoms).

Here, the ALJ found that Plaintiff could perform a wide range of tasks as a homemaker that are not consistent with the severity of her allegations. Plaintiff testified that she has three children under 12 years-old, and that her husband sleeps during the day as he works the night shift. (AR at 56.) Accordingly, the ALJ found that Plaintiff is responsible for taking care of the three children (i.e., getting them ready for school, driving them to school, and picking them up from school). (AR at 20.)

Plaintiff argues this is an insufficient reason to reject her symptom testimony as the ALJ misinterpreted and incorrectly applied Plaintiff's testimony. Plaintiff claims that she does not *always* perform these activities, and that she has nearby relatives that help when she experiences the headaches. However, even if the evidence is not clear on how long or often Plaintiff performed her daily activities, as long as the ALJ's determination is reasonable, it is not the Court's role to second-guess it. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (holding that, even when record was equivocal about how long

and often plaintiff engaged in daily activities, because ALJ's interpretation was reasonable the court would not second-guess it).

Thus, the Court finds that the ALJ provided a reasonable determination setting forth specific reasons based on substantial evidence in finding that Plaintiff's daily activities were not consistent with a person unable to perform tasks at the frequency alleged. Accordingly, the Court finds the ALJ properly relied on "specific, clear and convincing reasons" supported by substantial evidence in rejecting Plaintiff's symptom testimony. *See Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014) ("Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination."); *Singh v. Commissioner of Social Security Administration*, 2020 WL 5757620, at *3 (D. Ariz. Sept. 28, 2020) (finding ALJ did not err in discounting plaintiff's allegations of disabling symptoms and limitations because they were inconsistent with her reported activities).

## IV.   Remand

If the ALJ's decision is not supported by substantial evidence or suffers from legal error, the Court has discretion to reverse and remand either for an award of benefits or for further administrative proceedings. *Smolen*, 80 F.3d at 1292; *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). "Remand for further proceedings is appropriate if enhancement of the record would be useful." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004). "Conversely, where the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." *Id.* (citing *Smolen*, 80 F.3d at 1292).

Generally, after a finding that the administrative record does not support the agency's action, the proper course of action is to remand to the ALJ to further develop the record. *Treichler*, 775 F.3d at 1099-1100. In rare circumstances, courts may remand for an award of benefits. *Id.* at 1099. To remand for immediate award of benefits, the Court must find:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide

legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Garrison*, 759 F.3d at 1020. "Even if those requirements are met, though, we retain 'flexibility' in determining the appropriate remedy." *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014) (quoting *Garrison*, 759 F.3d at 1021).

The Court finds that "[r]emand for further administrative proceedings is appropriate [because] enhancement of the record would be useful." *Benecke*, 379 F.3d at 593. The ALJ erred by failing to properly address Dr. Sayegh's medical opinion. Further, the Court has determined that the ALJ properly addressed Plaintiff's symptom testimony, as he specifically found that the "overwhelming results of the claimant's physical examinations were normal" and confirmed benign by State agency medical consultants, and her daily activities were not consistent with the severity of her allegations. Thus, it is not clear from the record that the ALJ would be required to find Plaintiff disabled if all the evidence were properly evaluated using the correct standards. On remand, the ALJ shall give further consideration to the previously submitted medical opinion evidence and continue the sequential evaluation process to determine whether Plaintiff is in fact disabled.

Therefore, the Court, in its discretion, finds that a remand for further proceedings is appropriate to reconsider the medical opinion evidence of record and issue a new decision.

## CONCLUSION

Accordingly,

**IT IS RECOMMENDED** that Defendant's Motion for Remand (Doc. 22) be **GRANTED**;

**IT IS FURTHER RECOMMENDED** that the decision of the Commissioner be **REVERSED** and this case be **REMANDED** for further administrative proceedings consistent with this Recommendation.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Federal Rules of Appellate

Procedure, Fed. R. App. P. 4(a)(1), should not be filed until entry of the District Court's judgment. Pursuant to 28 U.S.C. § 636(b), any party may file and serve written objections within 14 days after being served with a copy of this Report and Recommendation. Pursuant to Rule 7.2(e)(3), Local Rules of Civil Procedure, objections to the Report and Recommendation may not exceed ten (10) pages. If objections are not timely filed, the party's right to de novo review by the District Judge is waived. *See U.S. v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003).

Dated this 19th day of July, 2024.

Michael T. Morrissey
_____
Honorable Michael T. Morrissey
United States Magistrate Judge

- 14 -